S03A1484. MANSOUR PROPERTIES, L.L.C. et al. v. I-85/GA. 20 VENTURES, INC.
(592 SE2d 836)

THOMPSON, Justice.

The parties own as tenants in common approximately 110 acres of undeveloped real property in Gwinnett County, Georgia. Appellee I-85/Ga. 20 Ventures, Inc. ("I-85") successfully petitioned the superior court for statutory partition of the property. Appellants Mansour Properties, L.L.C. and Lifestyle Family, L.P. ("Mansour") appeal, asserting, inter alia, that I-85 waived the right to seek partition based on the provisions of a written agreement between the parties. We agree and reverse the judgment of the court below.

In 1996, I-85's predecessor in interest contracted for the purchase of the subject property which is located in close proximity to what is known as the Mall of Georgia. Prior to the closing, the interests in the purchase contract were assigned to I-85 and Mansour. The purchase price was $7,000,000, and each party was to hold a 50 percent undivided interest as tenants in common (with each individual appellant owning 25 percent). Mansour contributed $3,000,000 in cash at the closing, and executed a purchase money promissory note for $500,000. I-85 executed promissory notes and security deeds in the amount of $3,500,000.

Before purchasing the property, the parties entered into a tenancy-in-common agreement ("the agreement"), specifying their rights and obligations relating to the common ownership. In essence, Mansour was an investor only, providing the cash at closing; each party was responsible for its share of the seller's notes when they became due; and I-85 was to market the property. In that capacity the agreement provided that I-85 was to "be responsible for the aggressive and professional marketing efforts of the Property and shall be responsible for the orderly performance by independent contractors, supervision, and completion of any necessary work for enhancement of the property without cost to [Mansour] who is an investor only." I-85 also agreed to "do what is necessary to preserve the investor status of [Mansour]."

By the following provision, the agreement prohibited transfer of a tenant's interest:

> Except [as otherwise provided] no tenant may sell, transfer, assign, or otherwise dispose of, mortgage, hypothecate, or otherwise encumber or permit or suffer any encumbrance of, all or any part of the interest of any such tenant in the property, unless approved in writing by all the tenants, and any attempt to so transfer or encumber the property shall be void.

The exceptions noted above allowed a tenant to transfer its interest to any other person or entity after (1) that tenant has fully paid its total obligation of the purchase price; (2) the selling tenant has delivered to the non-selling tenant written certification showing the name of the prospective transferee, and the negotiated price; and (3) the selling tenant has offered the non-selling tenant the opportunity to purchase. The contract further provided that a transferee will assume "the rights, duties, and obligations" of the transferor.

In 2000, without first offering to sell its interest in the property to Mansour in accordance with the right of first refusal provision of the agreement, I-85 filed the present application for statutory partition of the remaining tenancy in common.[1] The complaint alleged that the agreement between the parties made no provision as to how the property should be divided, and that a fair and equitable division of the property could not be made by metes and bounds; a hearing was sought to determine whether physical division is equitable under the provisions of OCGA § 44-6-166.1. The trial court granted a writ of partition, and after a hearing, determined that a division by metes

---

[1] Initially, the property consisted of 158 acres, but prior to the partitioning action, several parcels had been sold, and 110 acres remained.

and bounds will depreciate the value of the property as a whole. In accordance with OCGA § 44-6-166.1 (c), three appraisers were appointed, and an average appraised price of $12,202,666.67 was established. The court then issued a final order pursuant to OCGA § 44-6-166.1 (e) (1), requiring Mansour to tender into the court its share of the appraised price, or the property would be subject to public sale under the provisions of OCGA § 44-6-167. This appeal followed.

1. Mansour asserts that the parties waived the right to partition by virtue of the language of the tenancy-in-common agreement.

One who holds land as a tenant in common has a statutory right to seek a writ of partition where no provision is made as to how the lands shall be divided. OCGA § 44-6-160; *Paris v. Clay*, 223 Ga. 738 (1) (158 SE2d 377) (1967). However, " '[i]t is generally held that a party will not be decreed partition if it would be contrary to his own agreement,' " *Bowers v. Bowers*, 208 Ga. 85, 87 (1) (65 SE2d 153) (1951), citing *Rhodes v. Lane*, 202 Ga. 608, 610 (2) (44 SE2d 114) (1947).

"[A]n agreement not to partition may be implied, as well as express. . . . [A]n agreement giving cotenants rights of first refusal implies an agreement not to bring a partition action in lieu of a sale to the cotenants." 59A AmJur2d, Partition § 52. This Court followed that precept in *Rhodes*, supra at 609, where the language of a contract prohibited either party from selling or otherwise disposing of his undivided half-interest in real property without first giving the other party the opportunity to purchase that interest at a price not in excess of the original investment. The Court construed the right of first refusal language of the contract to prevent partition unless the party opposing partition be given the opportunity to purchase the interest under the express terms of the contract.

In other circumstances, our appellate courts have refused to partition a tenancy in common where partition impliedly contravened a written agreement between the parties. In *Bowers*, supra, a divorce agreement prohibited former husband from transferring his one-half undivided interest in real property without first offering it to his former wife at a sum not to exceed $3,500. In contravention of the agreement, he transferred his interest to his current wife in order that she bring an action for partition. The Court held that the current wife took, not as a bona fide purchaser, but with notice of whatever equities her husband had in the property, and that she was bound by his express agreement. The Court determined that the partition action could not defeat the clear terms of the divorce agreement, and by filing the petition for partition, current wife elected to sell her interest upon payment by former wife of $3,500. Likewise, in *Rathkamp v. Rathkamp*, 136 Ga. App. 423 (221 SE2d 221) (1975), a

settlement agreement incorporated into a final judgment of divorce awarded real property to the parties as tenants in common, and allowed wife to occupy the property until she made the election to sell or remarry. Husband then attempted to defeat the agreement by bringing an action for partition, but the court upheld dismissal of that action, holding that "husband's undivided interest in the property is . . . burdened with the alimony settlement agreement." Id. at 424. See also *Trimble v. Fairbanks*, 209 Ga. 741 (2) (76 SE2d 16) (1953) (where will provided that a property devised as a tenancy in common could only be sold by the joint acts of both parties, there was no right to seek partition). Compare *Ricketson v. Metts*, 173 Ga. App. 606 (327 SE2d 570) (1985) (where a settlement agreement divides the property of the marriage and there is no language which compels the conclusion that the parties intended to burden property, partition was proper).

The agreement in issue here required I-85 to offer Mansour a right of first refusal before disposing of or otherwise encumbering its interest, which I-85 failed to do. In addition to completing its financial commitment under the agreement, I-85 was contractually bound to put forth "aggressive and professional marketing efforts," to "protect the investor status of Mansour." And the contract further provided that any transferee would assume "the rights, duties, and obligations" of the transferor. This would not occur if the property were to become subject to public sale under OCGA § 44-6-167. Under the circumstances, I-85 could not seek partition because such an action is in direct contravention of the agreement.

2. Mansour submits that I-85 as the petitioning party in the partition action may not seek to invoke the buy-out procedures of OCGA § 44-6-166.1. See OCGA § 44-6-166.1 (a), (b); *Stone v. Benton*, 258 Ga. 539 (371 SE2d 864) (1988). Because we have held that the agreement between the parties constituted an implied waiver of the right of partition, we do not address that question and express no opinion as to its resolution. Nor need we consider any other remaining enumerations of error.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 16, 2004 —
RECONSIDERATION DENIED MARCH 5, 2004.

*Alston & Bird, Daniel N. Esrey, Peter M. Degnan, Morris, Manning & Martin, Warren W. Wills, Jr.*, for appellants.

*Thompson, O'Brien, Kemp & Nasuti, John P. O'Brien, Bret T. Thrasher*, for appellee.